MARIO ESCUDERO, demandante y recurrente, *v.* CRISTINO GUZMÁN, demandado y recurrido.

*Número:* R-67-60     *Resuelto:* 26 de junio de 1968

*Félix Ochoteco, Jr., Luis R. Polo* y *Antonio José Amadeo,* abogados del recurrente; *P. J. Santiago Lavandero,* abogado del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Dávila y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

La cuestión a resolver en este caso es si procede una demanda de desahucio en precario en la cual el recurrente alega ser tenedor del título de la parcela ocupada por el recurrido con una caseta para venta de golosinas al público, cuando la prueba demuestra que la edificación se encuentra en parte sobre los soportes del puente de la carretera Núm. 2 y en parte sobre dicha parcela. Concluimos que el juez de instancia no incidió al desestimar la demanda pues el recurrido podía presentar y presentó prueba indicativa, *prima facie*, de la inexistencia del título del recurrente.

El recurrente instó acción de desahucio en precario en contra del recurrido en la que alegó ser dueño de un solar de aproximadamente 4,000 metros cuadrados dedicado a la compra y venta de automóviles de la cual el recurrido detentaba unos 25 metros cuadrados en precario por lo que solicitó su desalojo. Este último en su contestación negó que el recurrente fuese dueño de propiedad alguna que el recurrido poseyera.

Las conclusiones de hecho de tribunal de instancia fueron las siguientes:

"1—El demandante es dueño en pleno dominio de una parcela de terreno de alrededor de 3860 metros cuadrados en el Bo. Pájaros de Bayamón frente a la Carr. Estatal Núm. 2.

2—Dicha parcela está cercada con una verja de alambre eslabonada en todo su alrededor. La verja la construyó el arrendatario actual de la parcela, Viasco Corp., [*sic*] y no existía cuando la demandante adquirió dicha parcela.

3—En la esquina noroeste de la parcela que colinda con la acera de la Carr. #2 y fuera de la verja, hay una porción de terreno de alrededor de 150 metros cuadrados. En esta porción de terreno el demandado construyó, a fines de 1961, una caseta

mobible [*sic*] para la venta de golosinas al público. La verja no existía para esa fecha. Antes de construirla, el demandado solicitó permiso al gerente del negocio de carros usados que tenía la parcela del demandante bajo arrendamiento, creyendo que esta porción de terreno le pertenecía. La caseta originalmente está [*sic*] montada sobre ruedas, pero actualmente descansa sobre el piso.

4—La porción de terreno donde ubica la caseta, como dijimos anteriormente, está fuera de la verja, entre ésta y las barandas del puente de la Carr. #2. De hecho, según pudimos apreciar en la inspección ocular, parte de la caseta está sobre los soportes del puente. Más aún, la prueba tiende a indicar que la porción de terreno donde ubica la caseta, forma para [*sic*] de la servidumbre de paso de la Carr. #2. Esta conclusión está, además, sostenida tanto por la declaración del Ing. del Dpto. de Obras José Manuel Gómez, como por la prueba documental presentada. No creemos propio, ni es necesario a los fines de este caso, hacer una adjudicación sobre este hecho. Basta concluir que la prueba crea serias dudas sobre la contención del demandante de que dicho predio de terreno le pertenece. La adjudicación final de esta cuestión corresponde hacerse en un procedimiento ordinario en que sea parte el Estado Libre Asociado, y no en el caso de autos."

Concluyó el tribunal de instancia que:

"La acción de autos fue iniciada a título de dueño por el demandante. Es esencial, para el éxito de la misma, que éste demuestre su capacidad como tal. Los hechos anteriormente reseñados demuestran que el demandante no estableció su capacidad como dueño.

Debe señalarse que no se trata aquí de un conflicto de títulos, como pretende sostener el demandado, puesto que él no adujo título alguno. Más bien, se trata de que el demandante no probó su título. Procede por lo tanto desestimar la demanda."

Apunta el recurrente, en síntesis, que incidió el juez de instancia al resolver (1) un conflicto de título que no era entre las partes litigantes y sí entre el recurrente y el Pueblo de Puerto Rico, no siendo éste parte en el procedimiento; (2) que el recurrente no había probado su título; (3) que

habiendo el recurrido entrado en posesión de la parcela en cuestión mediante permiso del arrendatario del recurrente, no pueda impugnar el título de éste en un procedimiento de desahucio; (4) que un plano de la Secretaría de Obras Públicas era admisible. Por último, (5) se apunta que la concesión de $800 de honorarios de abogado es excesiva.

1-2. Hemos resuelto que "El demandante en una acción de desahucio en precario debe, en primer instancia [*sic*], probar prima facie su caso, o sea, debe presentar prueba en torno a su título sobre la finca y que esa finca es la misma que está en posesión del demandado" en precario. Si no prueba esa circunstancia, no está justificada una sentencia a su favor. *Meléndez* v. *Pacheco*, 75 D.P.R. 95, 97-99 (1953). También hemos dictaminado que "cuando un demandado en desahucio . . . está poseyendo la finca objeto de la acción para conservarla, o disfrutarla, perteneciendo el dominio a otra persona, puede alegar como defensa que posee por un tercero que es el verdadero dueño, persona distinta de los demandantes." *Escudero* v. *Mulero*, 63 D.P.R. 574, 586 (1944); *Díaz* v. *Morales*, 39 D.P.R. 73, 76, 79 (1929). En *Martínez* v. *Figueroa*, 50 D.P.R. 951, 954 (1937), dijimos que "El si los demandantes apelados pueden o no atacar colateralmente en esta acción de desahucio, el título del demandante-apelante, depende, a nuestro juicio, de si ese título es nulo e inexistente o meramente, anulable. Si es lo primero pueden hacerlo; si lo segundo, no." Siguiendo esta norma, en *Ríos* v. *Román*, 71 D.P.R. 207, 210-211 (1950), caso en que se apoya en gran parte la contención del recurrente, concluimos que el demandado en desahucio no podía atacar el título del inmueble adquirido por el demandante en un procedimiento de ejecución en un caso de cobro de dinero por el fundamento de que dicho procedimiento era nulo pues se demostró que la sentencia en el pleito de cobro de dinero era anulable y no absolutamente nula. Véase, además, *Dávila* v. *Sotomayor*, 35 D.P.R. 794, 797-798 (1926).

Por el contrario, en *De León* v. *Pérez*, 54 D.P.R. 215, 218 (1939), donde se estableció que era absolutamente nula la sentencia que constituía la base del título del demandante, dijimos que tal sentencia podía ser atacada por el demandado en un pleito de desahucio y que en éste había "ausencia absoluta de título por parte del demandante, y como es a él a quien incumbe probar sus alegaciones, no pudiendo en ningún caso descansar en la debilidad o falta de título del demandado para sostener su acción, su pleito de desahucio no puede prosperar." *Casanova* v. *Sánchez*, 79 D.P.R. 176 (1956), es distinguible del caso que nos ocupa pues en aquél sólo se trató de impugnar el título del demandante sobre la base de que él no era el único dueño del inmueble.

■ En el caso ante nos era admisible la prueba del recurrido demostrativa de que la estructura descansaba en parte sobre los soportes de un puente y en parte sobre la servidumbre de paso de la carretera pública Núm. 2 y así lo pudo comprobar el juez sentenciador en su inspección ocular. Por lo tanto, establecida, *prima facie*, la inexistencia del título del recurrente, no podía prosperar la acción de desahucio en este caso.

■ 3. Se apunta que el demandado está impedido de impugnar el título del recurrente porque pidió permiso al arrendatario de éste para localizar la caseta en cuestión. Se invocan los casos de *García y Esteban* v. *Talavera*, 34 D.P.R. 661 (1925) y *Compañía Teatral* v. *Lloveras*, 40 D.P.R. 148 (1929). En el primero de estos casos se dijo que un inquilino no puede negar el título de su arrendador pero se indicó que podía haber excepciones. En el segundo dijimos que un arrendador que no reconoce la condición de arrendataria de otro no tiene causa de acción para exigirle que cumpla sus deberes como arrendataria. No tan sólo no son aplicables estos casos, sino que no conocemos razón alguna que impidiera al recurrido, al darse cuenta efectiva del lugar en que había localizado su caseta, y de que el recurrente

carecía de título sobre tal lugar, de invocar esta situación en su defensa en la acción de desahucio incoada en su contra.

■ 4. El cuarto apuntamiento es obviamente inmeritorio. El plano cuya admisibilidad se impugna es copia del original que se usó para la construcción de ese tramo de carretera según certificó en corte abierta el ingeniero Sr. José M. Gómez, funcionario a cargo de la Administración de la Propiedad del Estado Libre Asociado bajo cuya custodia obraba el original. Art. 410 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1782. Dichos planos fueron admitidos no para establecer como una cuestión adjudicada que el Estado tuviese allí establecida una servidumbre de paso. Veamos cómo se expresó el juez de instancia: "No, si no creo, de acuerdo con la Ley que sea necesario probar ninguna servidumbre, basta con que haya evidencia prima facie que pueda demostrar que hay una servidumbre, es lo suficiente para que se litigue en otro procedimiento, las cuestiones de título que se están presentando aquí . . . basta que se me demuestre, prima facie, como en este caso, que hay una servidumbre de paso de 15 metros desde el eje de la carretera y que cubre el sitio donde está la casilla."

Como vemos, ese plano no se admitió con el propósito de probar una servidumbre, cosa que no se podía hacer en el procedimiento de desahucio, sino sólo como indicio, *prima facie* de que el terreno donde ubicaba la caseta no pertenecía al demandante-recurrente en este caso. Por lo demás no hay que olvidar que se practicó una inspección ocular con la anuencia de las partes y el juez quedó en condiciones de aquilatar por sus propios sentidos esta cuestión. Tampoco se cometió este error.

5. Por lo que resulta de los autos juzgamos que procede reducir la condena de honorarios de abogado a la suma de $400. En este extremo debe modificarse la sentencia dictada en este caso.

*En vista de lo expuesto, se modificará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 18 de enero de 1967, en cuanto a la cuantía de los honorarios de abogado y así modificada se confirmará.*

El Juez Asociado Señor Blanco Lugo concurre con el resultado mas disiente de la reducción de los honorarios de abogado.